1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

OLAN D. WILLIAMS,

     Plaintiff,

  v.

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

     Defendant.

NO.  CV-13-03005-JLQ

MEMORANDUM OPINION;
ORDER RE:  MOTIONS FOR
SUMMARY JUDGMENT

14

15

16

17

18

     Plaintiff appeals from the final decision of the Commissioner of the Social
Security Administration ("Commissioner") which denied his application for
Disability Insurance Benefits ("DIB") after a hearing before an Administrative
Law Judge ("ALJ").   This case, filed on January 25, 2013, was reassigned to the
undersigned on December 2, 2013.  (ECF No. 19).

19

20

21

22

     Before the court are Cross-Motions for Summary Judgment.  (ECF Nos. 14,
16).  Plaintiff also filed a Reply brief. (ECF No. 18).  Plaintiff is represented by
attorney D. James Tree.  Defendant is represented by Assistant United States
Attorney Pamela DeRusha and Special Assistant United States Attorney Jeffrey

23

24

25

26

27

28

    [1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit.
No further action is necessary to continue this action by reason of the last sentence
of 42 U.S.C. § 405(g).

ORDER - 1

Staples.    Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**I. LEGAL STANDARDS**

    **A.**    **Sequential Evaluation**

    The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if the  impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

    The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

    Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is, benefits are denied.  If he is not, the decision maker proceeds to Step 2.

    Step 2: Does the claimant have a medically severe impairment or combination of impairments?  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step.

    Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt.

404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to Step 4.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past?  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is able to perform his previous work, he is not disabled.  If the claimant cannot perform this work, the inquiry proceeds to the Fifth and final Step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

This court's role on review of the decision of the ALJ is limited.  The court reviews that decision to determine if it was supported by substantial evidence and contains a correct application of the law.  *Valentine v. Comm'r. Soc. Sec. Admin,* 574 F. 3d 685,690 (9th Cir. 2009).  This court is obligated to affirm the ALJ's findings if they are supported by substantial evidence and the reasonable inferences to be drawn therefrom.  *Molina v. Astrue*, 674 F. 3d 1104, 1110-11 (9th Cir. 2012)**.**  Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).    This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, the ALJ, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

## II. PROCEDURAL HISTORY

Plaintiff initially filed an application for Disability Insurance Benefits ("DIB") on May 27, 2005 alleging disability beginning on February 16, 2005. (Tr. 80). Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an ALJ.  ALJ Richard Say held a hearing and on July 25, 2008, issued an order finding Plaintiff had severe impairments including obesity, degenerative disc disease in his lumbar spine, status post laminectomy, post cardiovascular accident and stenting with vision loss.   ALJ Say further found that Plaintiff could perform sedentary exertional level work.  Based upon the

testimony of vocational expert Gary Jesky, the ALJ concluded that jobs existed in the national economy Plaintiff could perform (including packaging line worker and small products assembler) and that he was not disabled. (Tr. 85-86). ALJ Say's decision is part of the administrative record herein. *Id*.

Contrary to the Commissioner's erroneous assertion otherwise in their Motion (ECF No. 16 at 6), Plaintiff did appeal ALJ Say's decision, the Appeals Council affirmed, and Plaintiff, through his attorney James Tree, appealed the agency's decision to federal court. On October 22, 2009, Magistrate Judge Cynthia Imbrogno affirmed the ALJ's decision and denied Plaintiff's Motion for Summary Judgment. *Williams v. Astrue*, 2009 WL 3422788 (E.D.Wash. 2009)(EDWA Cause No. 08-CV-3075-CI).

On February 25, 2010, Plaintiff filed a new application for Disability Insurance Benefits alleging a disability onset date of August 1, 2008 (Tr. 192). (Tr. 199). Plaintiff's application was denied initially and on reconsideration. Plaintiff's hearing was held before Administrative Law Judge Sue Leise on December 7, 2011. (Tr. 31-75). Plaintiff appeared at the video hearing and was represented by Mr. Tree. As in the 2008 administrative hearing, Gary Jesky testified as a vocational expert and Plaintiff's significant other, Sandra Lemley, also testified. On December 16, 2011, the ALJ issued a decision finding Plaintiff not disabled during the alleged period of disability. (Tr. 14-30). Plaintiff subsequently requested review of the ALJ's decision. (Tr. 148, 243-244). The Appeals Council denied his request on November 27, 2012 (Tr. 1-6), making the ALJ's ruling the "final decision" of the Commissioner as the term is defined by 42 U.S.C. § 405(g). Plaintiff commenced this action on January 25, 2013 seeking judicial review of the Commissioner's final decision. (ECF No. 1).

## III. FACTUAL BACKGROUND

The facts are contained in the medical records, administrative transcript (ECF No. 12)("Tr."), and the ALJ's decision, and are only briefly summarized

here.

### A.    Plaintiff's History

Plaintiff, Olan Williams, was born in 1963 and was 45 years old on the alleged date of disability onset (August 1, 2008) and 48 at the time of the ALJ's hearing in 2011.  Although enrolled in school until tenth grade, Plaintiff testified he only attended classes through sixth grade and was a "slow-learner."  (Tr. 315). In 1979, as a result of a motor vehicle accident, he had a left hip surgery with a rod placement.  In 1985 he was treated for lymphoma with radiation on his throat and chemotherapy.  (Tr. 396).  He also has a history of hypothyroidism, hypertension, vascular disease, degenerative disk disease of the lumbar spine, and suffers from chronic low back pain.

Plaintiff worked steadily as a garbage/recycling truck driver and collector for over 13 years.  In 2000, he was injured on the job and underwent lumbar spine laminectomy, followed by a course of physical therapy and strength conditioning. (Tr. 82).  He returned to work full-time in 2001 and continued to work until early 2005. In January 2005, he suffered from a branch retinal artery occlusion in the right eye.  Shortly thereafter, in February 2005, he suffered a stroke causing left homonymous hemianopia (vision loss).  (Tr. 262, 312). A bilateral carotid artery angiogram showed 99% stenosis of the right internal carotid artery, 75% stenosis of the left internal carotid artery, and severe 80% plus stenosis of the left vertebral artery.  (Tr. 253). He underwent surgery at Oregon Health Science University Hospital where two stents were placed for the right carotid artery and another at the origin of the left vertebral artery.  (Tr. 253-54).  As a result of these vascular incidents, Plaintiff was left with reduced  right eye acuity to 20/200 and a field defect that decreases his visual field on his left side. (Tr. 393).  Although initially advised not ever to drive again (Tr. 312), he was tested and passed a test by a special examiner qualifying him for a limited driver's license permitting him to drive locally during the daytime only. (Tr. 312).

Plaintiff is 5 feet 9 inches in height and weighs approximately 307 pounds (Tr. 21), making him morbidly obese.  An individual of such weight has a body mass index of 45.3 and is considered morbidly obese. Center for Disease Control and Prevention, BMI calculator, www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html. A person is considered morbidly obese (also termed "extreme obesity") if the BMI is 40 or greater. This category presents "the greatest risk for developing obesity-related impairments." SSR 01-1P.

Plaintiff has resided with his significant other, Ms. Lemley, for over 24 years and they have a 20-year old daughter. (Tr. 47)

### B. Medical Evidence

The medical record includes certain treatment notes and records from the time of Plaintiff's stroke and reviewed previously pursuant to Plaintiff's prior disability application (Robert Egan, M.D.;Terry Wood, M.D.;Wayne Clark M.D.;William Hamilton M.D.; James Ogden, O.D.).  Plaintiff was seen for his general health care needs at Klickitat Valley Health Family Practice Clinic primarily by physician's assistant, David Tuning, PA-C (2/2008 - 8/2011). The record also includes the opinions of treating family practice physicians N. Luera, M.D.[2] (12/2010) and William C. Bothamley, M.D. (8/2011), as well as his treating optometrist James Ogden.  The medical record also includes various lab test results, imaging study reports, and records from Klickitat Valley Hospital for emergency room visits on 10/10/2009 (back pain), 3/31/2010 (nose bleed), 4/15/2011 (abdominal pain).

A consultative psychological evaluation was conducted on September 21, 2011 by Jay M. Toews, ED.D (Tr. 314-317). A consultative physical examination was performed by Marie Ho, M.D. on May 22, 2010 (Tr. 287-293).

---

[2]  The parties and the ALJ have incorrectly spelled Dr. Luera's name as Lue*n*a.

Non-examining state agency medical professionals, Sharon Underwood, Ph.D. and Norman Staley, M.D.. also reviewed the record and filled out mental and physical assessments. (Psychiatric/Mental, October 11, 2010, Tr. 322-338)(Physical, June 15, 2010, Tr. 294-301).

The court does not exhaustively relate herein the Plaintiff's entire medical history, only the most important evidence relevant to the issues raised by the parties. Plaintiff's primary complaints are obesity, back pain, vision loss, and dizziness. Plaintiff has prescription medications for pain (hydrocodone and muscle relaxers), thyroid, blood pressure, cholesterol, gout and a blood thinner (Plavix).

### C.    Commissioner's Findings

The ALJ found at Step 1 that Plaintiff met the insured status requirements through December 31, 2010 and had not engaged in substantial gainful activity since August 1, 2008, the alleged onset date. (Tr. 19).

At Step 2, the ALJ determined that Plaintiff had the following severe impairments: status post CVA, carotid stenosis, status post carotid angioplasty and stenting with vision loss, degenerative disc disease status post back surgery, morbid obesity, gout, a learning disorder and an adjustment disorder with depressed mood.

At Step 3, the ALJ determined that the Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Pt. 404 Subpt. P App 1 (Listings).

At Step 4, the ALJ determined the Plaintiff had less than the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 CF 404.1567(a). He could only lift and carry up to 10 pounds, sit in 2-hour increments up to 8 hours in an 8-hour day and stand/walk for a total of 2 hours in an 8-hour day. He could occasionally balance, stoop, kneel, crouch, and crawl. He was limited to occasional climbing of ramps/stairs and could do no climbing of ladders/ropes/scaffolds. He should avoid moderate exposure to hazards such as

unprotected heights and dangerous machinery.  He had reduced visual acuity in his right eye which limited his depth perception and the peripheral vision in his left eye was limited.  He could do no work that required driving of a motor vehicle at night. He was able to remember, understand and carry out simple and detailed, but not complex tasks or instructions typical of occupations of an SVP of 1 or 2. (Tr. 20-21).  Based upon this determination of Plaintiff's RFC, the ALJ concluded Plaintiff could not perform his past relevant work as a garbage collector/driver.  (Tr. 21).

At Step 5, the ALJ, relying upon testimony of a vocational expert, concluded that there are jobs that exist in significant numbers in the national economy that the claimant can perform, including "cashier (DOT #211.462.010) and an assembler (DOT # 713.687-026.)." (Tr. 25).  Accordingly, the ALJ concluded that Plaintiff was not  disabled, as defined by the Social Security Act, from August 1, 2008 through December 31, 2010, the last date insured.

**IV. ISSUES**

Plaintiff's Motion alleges the ALJ erred by:

1) improperly rejecting Plaintiff's testimony;

2) improperly rejecting the opinions of Plaintiff's treating and examining medical providers in determining Plaintiff's RFC;

3) failing to include all of Plaintiff's limitation in her RFC;

4) improperly rejecting the lay witness testimony of Ms. Lemley; and

5) failing to meet her burden at Step 5, to identify specific jobs, available in significant numbers, which the claimant could perform in light of his specific functional limitations.

**V.    DISCUSSION**

**A.    Burden of Proof and Administrative Res Judicata**

Defendant argues that Plaintiff was required and failed to overcome the presumption of non-disability arising from the prior determination of non-disability by presenting new medical evidence demonstrating "changed circumstances."

Plaintiff did not address this issue in his Reply.

In cases involving a prior final agency decision of non-disability, a presumption of continuing non-disability arises with respect to any subsequent unadjudicated period of alleged disability. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). However, the presence of additional impairments rebuts the general presumption of continuing non-disability. In this case, the ALJ determined that Plaintiff suffered from additional severe impairments that were not included in the first decision including gout, a learning disorder, and an adjustment disorder with depressed mood. Although the ALJ's decision specifically acknowledges the prior 2008 decision of Judge Say (Tr. 23), it is silent as to any presumption of continuing non-disability. Accordingly, the court rejects Defendant's suggestion that a general presumption of non-disability was applied by the ALJ or applies herein.

Even where no general presumption of continuing nondisability applies, principles of res judicata still require that certain findings contained in the final decision by the ALJ on the prior claim be given res judicata consideration in determining whether the claimant is disabled. SSR 97-4(9), 1997 WL 742759, at *1-3 (Dec. 3, 1997). Specifically, the ALJ must adopt the "finding of a claimant's residual functional capacity, education, or work experience, or other finding required at a step in the sequential evaluation process for determining disability...in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." Id. The court applies this rule of law in herein evaluating the ALJ's decision.

**B.    Credibility**

Both in the medical evidence and in his testimony at the administrative hearing, Plaintiff described various symptoms from which he claims to suffer.

These included chronic pain, numbness, dizziness when he stands up or walks, trouble sleeping, difficulty staying in one position and walking, and difficulty with memory/concentrating. Plaintiff argues the ALJ failed to give clear and convincing reasons for rejecting his subjective complaints, primarily concerning the extent of his back pain, the need to switch positions frequently and to lay down, and dizziness.

The court notes that credibility determinations made in connection with a claimant's prior disability determination are not binding under administrative res judicata in a subsequent proceeding. *See Reed v. Massanari*, 25 Fed.Appx. 535, 537 (9th Cir. 2001)(unpublished); *Wilson v. Barnhart*, 188 Fed.Appx. 556, 557-58 (8th Cir. 2006)(unpublished).

The law is well-settled that, once a disability claimant produces evidence of an underlying physical impairment that is reasonably likely to be the source of his subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 2001) ( en banc); see also 20 C.F.R. § 416.929(a) (explaining how pain and other symptoms are evaluated). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's subjective symptom testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Further, the ALJ's credibility findings must be "sufficiently specific" to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Moisa*, 367 F.3d at 885.

The assessment of Plaintiff's credibility is critical in this case as his claim hinges on an evaluation of his ability to perform sedentary activity on a sustained basis.

**1. Dizziness**

With regard to dizziness, Plaintiff testified he gets "dizzy a lot from my

medication I guess and plus the no flow to the brain I guess. My back bothers me, my feet go numb, my legs go numb...I mean I just don't know day to day what I'm going to be like." (Tr. 42). He testified "a lot of times I get up and I go to do something and I get dizzy and I've got to grab onto something and wait till that goes by. Then I go from there and try to get by." (Tr. 43).   The ALJ found Plaintiff's testimony as to dizziness *from medications* was not credible "in light of his physician's statement that he has no medication side effects." (Tr. 23).

Plaintiff's subjective symptom of dizziness is reported in the medical record numerous times.  The lack of evidence of medication side effects is an inadequate reason to discredit *all* subjective symptom testimony of dizziness when dizziness is a common symptom which could be caused by something *other* than medication side effects. Plaintiff suffers from impaired vision, hypertension, high blood pressure, and vascular disease. He testified that he has been referred for additional stenting (but OHSU would not accept Washington's basic health insurance (Tr. 46)) as  "there's no blood flow due to...the arteries are clogged." (Tr. 45). Plaintiff's testimony reflects that he was not sure of the cause of his dizziness, testifying that it "may be related" to medication and "no flow to the brain I guess." (Tr. 45).  Third party observer of Plaintiff, Ms. Lemley, also testified that she has observed indications that he is dizzy "all the time." (Tr. 63). She explained that when he gets up from the couch, he'll have to hang onto a chair "and stand there a few minutes and then go" and that when Christmas shopping in a store they stopped three times "waiting for him to get undizzy." (Tr. 63).

If the ALJ finds, as here that Plaintiff has an underlying impairment that can reasonably be expected to produce the alleged symptoms, she may not discredit subjective symptom testimony for the sole reason that the degree of the limitation is not fully supported by the objective medical evidence. *See  Fair v. Bowen*, 885 F.2d 597, 601-02 (9th Cir.1989); *Stewart v. Sullivan*, 881 F.2d 740, 743-44 (9th Cir.1989); *Green v. Schweiker*, 749 F.2d 1066, 1070–71 (3rd Cir.1984)(a pain type

of analysis should apply to dizziness, since this type of complaint, just as with pain, cannot be discredited solely on the absence of direct medical evidence) *(cited with approval in Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir.1987)).  The ALJ's decision does not reflect adequate consideration of nor development of the record (e.g., frequency and duration) as to Plaintiff's subjective claim of dizziness.

### 2. Pain

A claimant's assertion of pain must be given serious consideration, as pain in and of itself can be disabling.

At the  administrative hearing, Plaintiff testified regarding his need for frequent changes of position to alleviate his back pain.  Plaintiff testified that he has good days and bad days, but he testified he really doesn't "even know what a good day is." (Tr 43).  He testified that he must frequently change position and is "up and down" all the time.  At night he can only sleep for 3-4 hours before he needs to get up, walk around, and then sit. (Tr. 51). Then he goes back to bed and starts the process again. He testified that on a bad day he'll lay down 2-3 times a day for a half hour to an hour and then get up and walk around. He has bad days 7 or 8 days a month.  He testified he can only be on his feet 20-30 minutes before the numbness in his feet sets in and his legs begin to hurt. (Tr. 57).

The ALJ found Plaintiff's chief complaint of chronic back pain not credible "in light of the treatment record" (Tr. 21).  The ALJ's decision describes an isolated entry in the medical record when Plaintiff was seen by PA on a follow up regarding *hypertension* where it was noted he was taking his medications and "doesn't feel bad" and that he was going to his daughter's sporting events.  The ALJ also pointed to the instance when he required emergency medical treatment after throwing tire rims off his porch.  The isolated records cited by the ALJ in the analysis of Plaintiff's symptoms of pain are not actually inconsistent with Plaintiff's testimony regarding his pain and do not go toward the existence, intensity, or duration of Plaintiff's back pain.  Moreover, Plaintiff's activities of

daily living, when accounting for the manner in which he performs them, do not demonstrate Plaintiff was inconsistent in his testimony regarding the severity of his pain.  It appears the ALJ ignored the restrictions on Plaintiff's activities of daily living.

Importantly, the ALJ failed to consider third party observation as a factor relevant in assessing credibility.  Plaintiff's significant other of 24 years described the signs of what she perceived as dizziness and extreme pain –testimony, which the ALJ did not specifically reject.  The value of such lay testimony, particularly that of family members, is well established. *See id*. at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value."); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993) ("An eyewitness can often tell whether someone is suffering or merely malingering .... [T]his is particularly true of witnesses who view the claimant on a daily basis ....").

As a result, substantial evidence does not support the ALJ's adverse credibility findings concerning the Plaintiff's testimony because the ALJ failed to account for Plaintiff's asserted needs, such as to change position frequently, or properly explain why these asserted specific needs were not credible.   The ALJ's downgrading of Plaintiff's symptoms resulted in a deficient hypothetical to the VE at Step 5.  This failure is fatal to the subsequent RFC determination.

## C.    Evaluation of Medical Evidence

Plaintiff argues the Commissioner's determination of non-disability is based on legal error.  He contends the ALJ improperly rejected the medical opinions of treating and examining providers Robert Egan, M.D., David Tuning, PA-C, N. Luera, M.D., and William Bothamley, M.D.

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.2008); 20 C.F.R. § 404.1527(b); SSR 96–5p, 1996 WL 374183, at *2 (July 2, 1996). In weighing medical source opinions in

Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Where a treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id*. at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957 (2002). Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Where conflict exists between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id*. at 632.  "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings.' " *Thomas*, 278 F.3d at 957 (*quoting Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

One specific, legitimate reason for such a discounting is where the treating physician's opinion is premised on the claimant's subjective complaints, which the ALJ had already properly discounted. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Where the treating physician's opinion is controverted by a non-treating physician's opinion based on independent clinical findings, the non-treating physician's opinion itself may be substantial evidence. *See Thomas*, 278 F.3d at 957 (*citing Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999)). " 'When there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict.' " *Id. (quoting Matney*, 981 F.2d at 1019).

Opinions of examining or consulting physicians alone may constitute substantial evidence supporting the ALJ's decision when they are consistent with other evidence in the record. *See Magallanes*, 881 F.2d at 752 ("[T]he reports of consultative physicians ... may serve as substantial evidence."); *Thomas*, 278 F.3d at 957 ("The opinions of nontreating or non-examining physicians may ... serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); see also 20 C.F.R. § 404.1527(e) (stating that the opinions of non-examining physicians constitute medical evidence).

Physicians' assistants are medical professionals, but they are not "acceptable medical sources" (20 C.F.R. § 404.1513(a)) under the social security framework. They are considered "other sources," 20 C.F.R. § 404.1513(d)(1).  The distinction between "other sources" and an "acceptable medical source" is important because only an "acceptable medical source" may be considered a "treating source." See 20 C.F.R. §§ 404.1502, 416.902. The regulations provide that, "[i]n addition to evidence from the acceptable medical sources" evidence from other sources should

be used to "show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 CFR § 404.1513(d).  An ALJ may discount testimony from these "other sources" if the ALJ "gives reasons germane to each witness for doing so." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).

Notwithstanding, S.S.R. 06–3p advises adjudicators that opinions of "other medical sources" may be given more weight than a treating physician if certain factors are present. As stated in the Ruling, "Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id*. For example, it may be appropriate to give more weight to an other source than an acceptable medical source if the other source has seen the claimant more often and has provided better supporting evidence and a better explanation for his or her opinion. *Id.*

### 1.    Robert Egan, M.D.

Robert Egan, M.D. of Casey Eye Physicians & Surgeons conducted two neuro-ophthalmic examinations of Plaintiff in 2005 after his stroke.   In May 2005, Dr. Egan wrote a one paragraph letter to "whom it may concern" where he concluded that Plaintiff was "permanently disabled from driving and work due to a sever visual defect." (Tr. 347).  This opinion was prepared prior to the alleged onset date under consideration and was submitted in connection with Plaintiff's first application for benefits which was denied.  Although ALJ Leise was not required to consider or even discuss evidence relating to the prior claim, the ALJ is entitled to consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms. *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir.2005).  According to Dr. James Ogden's December 19, 2011 letter, Plaintiff's visual impairments have "remained stable for the past five years." (Tr. 393).

The ALJ rejected Dr. Egan's opinion for the same reasons identified in ALJ Say's prior decision, including the lack of support by objective evidence, failure to

consider vocational alternatives, and the fact Plaintiff continues to drive an automobile.  Plaintiff challenged ALJ Jay's rejection of Dr. Egan's opinion in his prior appeal which was rejected by Judge Imbrogno in a well-reasoned analysis. As noted by Judge Imbrogno, in another letter dated the same date to Dr. Clark, Dr. Egan clarified the scope of Plaintiff's impairment stating that he was "disabled from his work *as a sanitation truck driver*."  2009 WL 3422788 (E.D.Wash. 2009); *see also* Tr. 395.  The court agrees with Judge Imbrogno's analysis of the rejection of Dr. Egan's conclusory opinion, and for the same reasons set forth in her opinion, concludes the ALJ did not error in rejecting this opinion.

### 2.    Family Practice Providers

Plaintiff was seen by David Tuning, PA-C at the Family Practice Clinic since at least 2005. (Tr. 345, 348).  On December 3, 2010, Plaintiff was seen by Mr. Tuning "for a disability evaluation for Tree Law Office."  In connection with this visit, Mr. Tuning wrote in a clinic note "I certainly believe he is disabled and can not work." (Tr. 391).     The same day, questions set forth on a form from  Tree Law Offices entitled "Medical Report" were answered on Plaintiff's behalf.  This report appears to have been filled out by Mr. Tuning and co-signed by N. Luera, M.D.  It does not appear in the record that Dr. Luera ever otherwise treated Mr. Williams. The ALJ accorded "little weight" to Mr. Tuning's opinion that Plaintiff was disabled and also the following opinions included in the report: that Plaintiff would need to lie down 20 to 30 minutes during the day; work on a regular and continuous basis would cause his condition to deteriorate; and he would miss work 4 or more days a month.  The reason the ALJ cited for giving these opinions little weight was that they were "not supported by objective findings and are based, in part on the claimant's subjective complaints, which are not fully credible."  (Tr. 23).

On August 19, 2011, Plaintiff was examined again by Mr. Tuning according to his clinic note, to have "disability paperwork filled out for the Tree Law Office."

(Tr. 385) The clinic notes states that "this was done" and that a phone call would be made once the form had been signed.  (Tr. 385).  Although the handwritten report appears to have been prepared by Mr. Tuning, the same preparer of the 2010 report, the report is solely signed by Family Practice Clinic provider William Bothamley, M.D.  There is no indication in the record that Dr. Bothamley conducted an interview of Plaintiff or was present during the examination by Mr. Tuning.  The ALJ accorded "little weight" to the following opinions included in this report: that Plaintiff would need to lie down during the day; work on a regular and continuous basis would cause his condition to deteriorate; and he would miss 4 or more days of work per month. (Tr. 23).  The ALJ gave the same reasons for rejecting this report as she did for rejecting the 2010 report.

The ALJ also concluded that the 2010 and 2011 reports "provide no basis for additional limitations" because they were based on "the claimant's longstanding impairments including stroke residuals and remote history of back surgery."  (Tr. 23).  The ALJ's opinion states "there is no evidence the claimant's stroke residuals or back impairment have worsened since the...decision of July 25, 2008" and that "[h]is vision loss and back symptoms have remained stable over many years." *Id*.

Mr. Tuning is a physician's assistant and an "other source" under 20 C.F.R. § 404.1513(d).  The ALJ therefore may reject his opinion for "germane" reasons. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Furthermore, evaluations of a claimant prepared by medical professionals other than the physician, even where the evaluation is reviewed and signed by a supervising physician, will not typically be treated as evidence from "an acceptable medical source." *See Garcia v. Astrue*, 2011 WL 3875483, at * 15 (finding that doctor's signature on reports authored by physician's assistant did not transform reports into evidence from an "acceptable medical source" where the evidence indicated that the physicians assistant prepared the reports following his examination of claimant); *Freeman v. Astrue*, 2011 WL 4625334, * 4–5 (E.D.Wash. Oct.3, 2011) (finding that "interdisciplinary team"

approach noted in Gomez did not apply where there was no evidence that nurse practitioner worked closely with doctor who signed nurse's opinion letter); *Vasquez v. Astrue*, No. CV–08–078–CI, 2009 WL 939339, at *6 n. 3 (E.D.Wash. Apr.3, 2009) (PA's report "signed off" by a superior believed to be a doctor did not constitute "acceptable medical source" opinion).

The ALJ accorded the 2010 and 2011 medical reports of Mr. Tuning (signed off by doctors Luera and Bothamley) little weight, first, because they were based upon Plaintiff's subjective complaints. This is problematic because, as the court set forth above, the ALJ's credibility analysis was inadequate.  Moreover, a patient's complaints or reports of his complaints, or history, is an essential diagnostic tool. The ALJ also accorded them little weight because they were "not supported by objective findings."  Although the form questionnaires did not include and were not accompanied by objective findings, the Family Practice Clinic had treated Plaintiff for years and had treatment notes and objective test results in the Plaintiff's medical record.  These included imaging studies of the lumbar spine performed in February 2008 and 2009 indicating degenerative changes of the spine, degenerative spondylosis and joint changes, a decrease in disc height, and osteophytes suggestive of DISH [diffuse idiopathic skeletal hyperostosis].  (Tr. 284, Tr. 258).  Because Mr. Tuning was the Plaintiff's primary treating provider, rejection of his opinions required more specific reasons than those set forth by the ALJ in the opinion.

### D.   RFC and Restrictive Postural Limitations

The errors in the evaluation of Plaintiff's credibility and of the medical evidence necessarily require reevaluation on remand of what impact, if any, it has on the Plaintiff's RFC.  Although the court vacates the ALJ's decision, the court provides the following guidance as to the other deficiencies present in the ALJ's analysis.

In several aspects it appears the ALJ failed to adequately develop the record. Plaintiff argues in his Motion that the ALJ also erred in failing to properly analyze Dr. Ho's assessment of Plaintiff's limitation in his ability to stoop.  Examining physician, Marie Ho, M.D., opined Plaintiff had "*restrictions* of postural activities" and that he should "*avoid*" "kneeling, crouching, and stooping" due to the limitations of his lumbar spine.  (Tr. 293). The ALJ gave Dr. Ho's entire opinion "significant weight" and endorsed all of the exertional limitations reported by Dr. Ho, except the ALJ interpreted the word "avoid" as "not to preclude him from occasionally performing these activities." (Tr. 22).  Under SSR 96–9p, "An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply...."

This issue was raised by Mr. Tree at the administrative hearing in his opening and closing comments.  The ALJ concluded Plaintiff had the capacity to stoop up to 20 minutes per hour, 5 days a week, based upon "[h]is ability to cook, do housework and yard work, do laundry and play pool suggests a capacity for occasional postural activities."  An ALJ may not substitute her own judgment for the considered judgment of medical professionals.  Second, Plaintiff actually testified that he does not do yard work and no one, including Plaintiff, has claimed he is unable to stoop.  Rather, the issue is whether he ought to stoop when a physician, evaluating a person with a degenerative condition, advises against it. The Commissioner correctly notes that even a limitation to never stooping does not direct a finding of disability.  However, given its significance under SSR 96-9p, the record should be further developed as to this limitation and Dr. Ho's assessment clarified, in that such a limitation would "usually" lead to a finding of disability. If the significance of Dr. Ho's assessment of Plaintiff s postural limitations was unclear, then an ALJ is required to adequately develop the record, which was not

done here.

In addition, it appears the ALJ failed to adequately consider SSR 02-1P on the effects of Plaintiff's impairments, including morbid obesity, on Plaintiff's ability to sustain function over time.  RFC assessments must consider Plaintiff's impairments in aggregate and an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. "The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." SSR 02-1P.

**E.    Step 5**

**1.    Cashier: Inconsistency with the Dictionary of Occupational Titles**

Finally, Plaintiff contends that the ALJ erred by accepting the VE's testimony that Plaintiff could work as a Cashier, without adequate resolution of the inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT")[3].  When a VE provides information about the requirements of an occupation, the ALJ has an affirmative duty to determine whether the information conflicts with the DOT and to obtain an explanation for the apparent conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir.2007). The ALJ must resolve the conflict, and make findings in their decision about how

---

[3]  DOT is a publication of the United States Department of Labor that gives detailed requirements for a variety of jobs. The Social Security Administration has taken administrative notice of the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 n. 8 (9th Cir.2007). See United States Department of Labor, DOT (4th ed.1991), available at http:// www.occupationalinfo.org. The Social Security Administration relies "primarily on the DOT" for "information about the requirements of work in the national economy" at steps four and five of the sequential evaluation process. SSR 00–4P, 2000 WL  1898704 *2 (Use of vocational experts and occupational information in disability decisions).

the conflict was resolved, before relying on the testimony to find that a claimant is not disabled. *Id*.; SSR 00–4p, 2000 WL 1898704 (S.S.A.).  For an ALJ to accept VE testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir.2008).

   A conflict between the DOT and the vocational expert testimony did exist in this case.  Although the VE testified Plaintiff would require sedentary work, the VE testified such a person could perform the job of Cashier, DOT 211.462-010, despite its being identified in the Dictionary of Occupational Titles ("DOT") as a light duty job.  The vocational expert stated: "The DOT classifies that as light, unskilled, SVP 2, but based on my experience there are those jobs that are performed at the sedentary level essentially. And I believe that there are greater than 1500 statewide, greater than 150,000 nationally." (Tr. 70).  Without further inquiry, the ALJ identified the conflict in her decision and accepted the vocational expert's testimony.  (Tr. 25).

   As to the job of Cashier, the ALJ erred in deferring to the VE's experience *alone* without any explanation of what experience or data he based his opinion on.  Such indefinite testimony is not persuasive evidence.  *See Barat v. Astrue*, 2011 WL 2446280 at *4 (N.D.Cal. 2011)(even though the VE had forty years of experience, the ALJ should not have simply deferred to his experience alone).  *Compare e.g., Buckner Larkin v. Astrue*, 450 F.App'x 626, 628-29 (9th Cir. 2011)(VE's deviation was supported by the VE's own labor market surveys, experience and research).

   Although not raised by Plaintiff, the court notes that the VE determined that Plaintiff could perform the job of Cashier even though the ALJ informed him that *he was to assume an individual with a sixth grade education*.  The DOT notes that a cashier involves skills in Mathematical Development of a level of 2.  At mathematical level 2, the employee may be required to "[a]dd, subtract, multiply,

and divide all units of measure," "[p]erform the four operations with like common and decimal fractions," "[c]ompute ratio, rate, and percent," "[d]raw and interpret bar graphs," and "[p]erform arithmetic operations involving all American monetary units." DOT App. C (4th ed. rev.1991), 1991 WL 688702. The VE did not elaborate on the mathematical requirements of a cashier, and the ALJ did not inquire or find that Plaintiff could perform the mathematical requirements.

At best, the record would suggest Plaintiff has skills equivalent to a sixth grade level.  There is no apparent reason to assume Plaintiff's past work as a garbage collector would require the same intellectual functioning level as a cashier. Plaintiff has a learning disorder and a history of being a slow learner and stroke. Dr. Toews, Ed. D. opined that Plaintiff had "memory difficulties...likely due to difficulties learning" and "a low fund of information" and "difficulties with conceptual thinking." (Tr. 317).  He assigned a Global Assessment Functioning ("GAF") score of 55.  (Tr. 317).  Plaintiff testified he has difficulty understanding what he's reading (Tr. 50) and that Ms. Lemley must help him organize his medications in a daily case (Tr. 58).  Furthermore, in the 2008 prior decision of ALJ Say, cashier was *not* one of the jobs identified by Mr. Jesky or the ALJ.  (Tr. 85). ALJ Say's RFC finding included the limitation that Plaintiff was only capable of "*simple* reading, writing, and arithmetic" (Tr. 82), likely akin to a math level 1 (not 2). Though bound under administrative res judicata by findings as to Plaintiff's borderline intellectual functioning, ALJ Leise did not adequately develop or define this limitation in her hypothetical to the VE or in her ultimate findings. *See Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir.1988) (in absence of "new" information, findings of earlier ALJ concerning claimant's RFC "entitled to some res judicata consideration in subsequent proceedings").

The ALJ erred in failing to properly explain deviation from the DOT, and did not adequately develop or describe the Plaintiff's level of intellectual functioning necessary to determine whether he was capable of performing the job of Cashier.

*Light v. Social Sec. Admin.*, 119 F.3d 789 (9th Cir. 1997)(remanding for further proceedings where the job categories the ALJ found suitable were inconsistent with his poor reasoning and math skills).

**2. Lens Inserter**

The VE alternatively "believ[ed]" there were over 1000 "assembly jobs" in Oregon that Plaintiff could perform at the sedentary unskilled level. The Ninth Circuit cases have found that approximately one thousand jobs in the local area is a significant number. *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir.2002). The representative example provided by the VE for that work was DOT number, 713.687-026. This DOT number refers to "Lens Inserting Assembly" which is in the category of "fabrication and repair of ophthalmic goods" – an interesting choice, given Plaintiff's severe vision impairment. The DOT specifically states that a lens inserter "[f]its lenses into plastic sunglass frames and places frames *on conveyor belt* that passes under heat lamps which soften frames preparatory to setting of lenses."

There is no evidence that this is the specific job that the VE—or the ALJ—had in mind either as suitable for Plaintiff or when reporting the incidence of available jobs. At the time of the hearing, neither the VE, ALJ or Plaintiff's attorney, mentioned or described the job "lens inserter." When Plaintiff's attorney inquired whether the assembly jobs the VE had considered were "on a conveyor belt type system," the VE testified that he had "limited that jobs that I noted to those that are not." (Tr. 72). Yet the DOT specifically states that a lens inserter job is at a conveyor belt. Instead, the VE described a job where a person might stand (or sit on a stool) at a chest-level bench and use a hand tool to assemble a "multi-tool." (Tr. 73). The ALJ's decision specifically lists the DOT number for a lens inserter, but broadly identifies the number with the job of "assembler," which does not exist.

The VE testified that he "believ[ed]" the job incidence figures for sedentary, unskilled "assembly jobs" were "greater than 1,000 statewide and greater than 100,000 nationally." (Tr. 70). The ALJ's decision adopted these figures, without further inquiry made of the VE. (Tr. 25). Judging by the numbers, it is obvious the VE was *not* describing the incidence of lens inserters jobs performed *at a bench*, which may not exist at all. As the incidence figures are the same as identified in ALJ's Say's previous decision, the court can surmise that the VE based his figures on an occupational *group* of "small products assembler" (perhaps limited to bench hand work) that comprises several types of occupations within the range of work. As the ALJ did not make further inquiry, the court is left to speculate as to exactly what jobs the vocational expert and the ALJ relied upon.

The general discussion of assembly work at the administrative hearing should have prompted the ALJ to further inquire of the VE where the ALJ specifically found that Plaintiff has limited visual acuity, including depth perception. (Tr. 20). Assembly line often requires work at a conveyor belt, near acuity, and the DOT's description of certain assembler jobs require constant or frequent depth perception. *See* DOT Nos. 739.687–030, 706.684–042; *See e.g., Trim v. Astrue*, No. 2:09cv030, 2011 WL 5075641, at *4 (W.D.N.C. Oct. 26, 2011). Further, "if a visual limitation prevents an individual from seeing the small objects involved in most sedentary unskilled work, or if an individual is not able to avoid ordinary hazards in the workplace," there will be significant erosion of the sedentary occupational base. SSR 96–9p.

The Step 5 responsibility is on the ALJ. Determining the functional demands and job duties of *specific* jobs and matching those requirements to a claimant's limitations is the very task the ALJ must undertake at Step 5. The ALJ did not do so. On remand, should the case proceed to Step 5, the ALJ should present a hypothetical question corresponding to the Plaintiff's RFC and if the VE relies upon occupational *group* data to provide numbers of specific jobs available, the

ALJ should further question the VE.

## VI.    REMAND

This matter is remanded to the ALJ to hold a new administrative hearing.  On remand, the ALJ should reopen the hearing to receive additional evidence, take testimony, make assessments of the witnesses' credibility, reevaluate the medical and lay testimony, reassess RFC, and reexamine the Step 5 analysis and conclusion. *See, e.g.,  Bunnell v. Barnhart*, 336 F.3d 1112, 1115–16 (9th Cir.2003) (remanding for further administrative proceedings rather than for award of benefits was required in response to ALJ's failure to provide adequate reasons for rejecting opinion of treating physicians and failure to properly reject claimant's subjective complaints and lay testimony, where outstanding issues remained). The ALJ shall then issue a new decision based on the total record.

## VII. CONCLUSION

Plaintiff's Motion For Summary Judgment (**ECF No. 14**) is **GRANTED** and Defendant's Motion For Summary Judgment (**ECF No. 16**) is **DENIED**. Pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's decision denying benefits is REVERSED and this matter is REMANDED to the Commissioner for a new hearing consistent with this Opinion.

IT IS SO ORDERED. The Clerk of the Court shall enter this Order, enter judgment remanding this matter to the Defendant Social Security Commissioner, provide copies to counsel, and **CLOSE THE FILE**.

DATED this 15th  day of January, 2014.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE